**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 6, 2010

Charles R. Fulbruge III
Clerk

No. 09-50040

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSHUARON ANTWIONNE STANDIFER, also known as Joshua Antwion Standifer

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:08-CR-74-2

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Joshuaron Antwionne Standifer ("Appellant") brings several challenges to his conviction for conspiracy to possess with intent to distribute crack cocaine. We AFFIRM.

## I. BACKGROUND

On March 28, 2008, police officers in Waco, Texas, participated in an undercover drug buy between Appellant, his cousin Jeremy Standifer ("Jeremy")

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and a confidential paid informant named Denny Boyd ("Boyd"). Boyd set up the buy with Jeremy, arranging to purchase 40 grams of crack cocaine for $2,000. The meeting took place in the parking lot of a Walmart in Copperas Cove, Texas. During the course of his drive to the Walmart parking lot Boyd had a series of phone conversations with Jeremy about their progress on the drive and where they would meet. Boyd testified that he spoke mainly to Jeremy but that he spoke once directly to Appellant.

When Appellant and Jeremy arrived at the Walmart they pulled up next to Boyd's car, and Appellant gestured that they should go over to the side of the building, around a Hollywood Video store. Both vehicles parked, and Jeremy exited the car and removed an envelope from the "breather cap" in the motor of the car in which the cousins had arrived. According to Boyd, Appellant stayed in the car and was looking around the area while Jeremy removed the drugs. Jeremy got in Boyd's car and asked Boyd if he had the money. Boyd showed Jeremy a roll of bills and asked to see the drugs. Jeremy showed Boyd that the envelope contained crack cocaine. Boyd began to count out the money, and then the officers came in and arrested Jeremy, Appellant, and Boyd.

Appellant and Jeremy were charged in a superseding indictment with one count of aiding and abetting possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2, and one count of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(iii). At trial Boyd testified as to his interactions with the defendants and his observation of what took place during the exchange. In addition, the Government presented as a witness a prisoner, Mark Johnson ("Johnson"), who testified that he became acquainted with Appellant in prison and that Appellant had told him that he and Jeremy went out of town on a drug deal "to serve an undercover," and that although the police had a "phone tap" they had "nothing on him" because "the phone wasn't in his name." Johnson also

testified that Appellant told him they had agreed to deliver 56 grams of crack but had only brought 47 to the buy, and that they thought they could "get over" on Boyd because he was a drug user and wouldn't have a scale with him. A crime lab technician testified at trial that the envelope contained 26.41 grams of crack cocaine. Records from the Motel 6 in Waco were introduced to prove that Jeremy had rented rooms at the motel during the time that Boyd had been staying there. The arresting officer testified that two cell phones were found in the car in which Appellant and Jeremy had arrived at the scene of the buy. The phone records of calls made to and from those phones were admitted as business records at trial.

The jury returned a verdict of not guilty on the count of aiding and abetting possession with intent to distribute but a verdict of guilty on the count of conspiracy to commit possession with intent to distribute. The district court sentenced Appellant to 110 months of imprisonment and five years of supervised release. Appellant timely appealed.

## II. ANALYSIS

Appellant challenges his conviction on several grounds. First, he argues that the evidence was insufficient to support the conviction. Second, he argues that his acquittal on the charge of aiding and abetting possession with intent to distribute is inconsistent with his conviction for conspiracy to possess with intent to distribute. Finally, Appellant challenges two of the district court's evidentiary rulings. We address each issue in turn.

Appellant argues that the evidence was insufficient to support his conviction for conspiracy to possess with intent to distribute. We review a challenge to the sufficiency of the evidence supporting a conviction *de novo*. *United States v. Harris*, 566 F.3d 422, 435 (5th Cir. 2009). We review the evidence "in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the trial court," and any conflicts in the evidence must be resolved in favor of the jury's verdict. *United States v. Lee*, 217 F.3d 284,

288 (5th Cir. 2000). This standard of review remains the same whether the evidence is direct or circumstantial. *United States v. Bryant*, 770 F.2d 1283, 1288 (5th Cir. 1985). The elements of conspiracy to possess cocaine with intent to distribute under the statutes charged in this case are (1) an agreement with one other person to possess with intent to distribute at least five grams of cocaine; (2) defendant's knowledge of the agreement, and (3) defendant's voluntary participation in the conspiracy. *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) (listing elements where amount required is 5 kilograms); 21 U.S.C. 841(b)(1)(B)(iii) (identifying quantity requirement of 5 grams). Agreement may be inferred from circumstantial evidence. *Percel*, 553 F.3d at 910.

Appellant argues that the evidence was insufficient because (1) Boyd, the confidential informant, was not credible, and (2) mere presence is insufficient to support a conviction for conspiracy. As to Boyd, Appellant argues that Boyd was not credible because he was a drug user (Boyd's drug use came out at trial and Appellant's counsel cross-examined him about it) and because he was confused about the dates of the arrest. It is well-established that credibility judgments about witnesses are the province of the fact-finder – in this case, the jury. *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). We "must accept all credibility choices that tend to support the jury's verdict." *United States v. Saenz*, 747 F.2d 930, 936 (5th Cir. 1984). The lapses, if they are such, that Appellant identifies are minor inconsistencies and a reasonable jury could have found Boyd credible.

Appellant is correct that mere presence or association cannot support a conviction for conspiracy. *See United States v. Bermea*, 30 F.3d 1359, 1552 (5th Cir. 1994). But in this case there was far more than mere presence. The evidence showed that Appellant and Jeremy drove to meet Boyd together, and, based on his conversation with Boyd and his overheard instruction that they would arrive in 10 minutes, the evidence further showed that Appellant knew they were

driving to meet someone in a Walmart parking lot. Upon arrival Appellant told Boyd the cars should drive to a more secluded area of the parking lot. Although Appellant stayed in the car while Jeremy delivered the drugs, he saw Jeremy pull an envelope out of a hidden area of the car under the trunk and get into Boyd's car, and Boyd testified that Appellant appeared to be keeping watch while the transaction took place. Boyd also testified that he had seen Appellant and Jeremy in possession of marijuana and crack cocaine before the day in question. Further, a prison inmate, Johnson, testified that Appellant had discussed the case with him and admitted to participating in the deal. This evidence was sufficient for a reasonable jury to find Appellant guilty of conspiracy beyond a reasonable doubt.

Appellant next argues that his acquittal on the aiding and abetting charge is inconsistent with his conviction on the conspiracy charge. "In considering whether alleged inconsistent verdicts may be reconciled, we view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency." *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001). Inconsistent verdicts do not generally require reversal of a criminal conviction. *United States v. Sylvester*, 143 F.3d 923, 930 (5th Cir. 1998). This court has specifically held that "even if the counts [are] overlapping, the law does not require consistency of verdict between the separate counts." *United States v. Pena*, 949 F.2d 751, 755 (5th Cir. 1991) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984)).[1] The verdicts in this case are not necessarily inconsistent at all:

---

[1] The two charges at issue in this case are (1) aiding and abetting (acquittal) and (2) conspiracy (conviction). To prove aiding and abetting the Government must show that the defendant: "(1) associated with a criminal venture; (2) participated in the venture; and (3) sought by action to make the venture successful. To be guilty of possession with intent to distribute, the defendant must have aided and abetted both the possession and the intent to distribute." *United States v. Infante,* 404 F.3d 376, 385 (5th Cir. 2005) (citations omitted). To prove conspiracy, the Government must show (1) an agreement with at least one other person to possess with intent to distribute, (2) defendant's knowledge of the agreement, and (3) defendant's voluntary participation in the conspiracy. *Percel*, 553 F.3d at 910.

"To convict [the appellant] of conspiracy, the jury did not have to find that he participated in the actual sale . . . . It had to find that he entered into an agreement to participate in that sale, and there was sufficient evidence for it to so conclude." *United States v. Fontenette*, 1994 WL 93273, at *3 (5th Cir. March 9, 1994) (unpublished). Even if they were inconsistent however, we will not generally reverse inconsistent verdicts, because they "may simply be a reflection of the jury's leniency." *Pena*, 949 F.2d at 755. *See also United States v. Pereira*, 1997 WL 681129, at *5 (5th Cir. Oct. 10, 1997) (unpublished) (upholding conviction on conspiracy and acquittal on aiding and abetting on the grounds that inconsistent verdicts are to be tolerated because they may result from jury nullification or compromise). We see no reason to reverse the conviction in this case.

Finally, Appellant brings two evidentiary challenges. We review evidentiary rulings for abuse of discretion. *United States v. Parsee*, 178 F.3d 374, 379 (5th Cir. 1999). If we find abuse of discretion, we will apply a harmless error analysis. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). Error is harmless unless it substantially prejudices a defendant's rights. *Id.*

Appellant's first contention is that the district court abused its discretion by admitting into evidence telephone records that were obtained from Sprint and corresponded to the phone numbers of two phones found in the front seat of the car in which Appellant and Jeremy arrived at the scene of the crime. Appellant challenges both the relevancy and the authentication of these records. Neither objection has merit. The phones were found in the front seat of the car in which Appellant and Jeremy arrived at the scene, and there was testimony by Appellant that he had spoken on a cell phone his cousin had handed him during the drive and testimony by the confidential informant, Boyd, that he had spoken to Appellant and Jeremy during their drive. The phone records tended to corroborate that testimony and admitting them was therefore not an abuse of

discretion as to relevancy. Appellant also argues that the records were not properly authenticated because the phone was not in his name. The phone, however, was found in the car that Appellant and Jeremy drove to the scene of the drug deal and Appellant admitted to speaking on the phone. It was not an abuse of discretion to consider the records properly authenticated. Even if the district court had abused its discretion as to relevancy or authentication, or both, the error would be harmless given the wealth of evidence against Appellant. *See Morgan*, 505 F.3d at 339.

Appellant's second evidentiary contention is that the district court abused its discretion in excluding a statement made by Jeremy that Appellant was not involved in the crime. (The statement was allegedly made verbally at the time of the arrest and later in a written statement). Appellant argues that the statement should have been admitted as a statement against penal interest. A statement will be admitted under the "against penal interest" exception to the hearsay rule if certain conditions are met: "(1) The declarant must be unavailable; (2) The statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) The statement must be corroborated by circumstances clearly indicating its trustworthiness." *United States v. Dean*, 59 F.3d 1479, 1492 (5th Cir. 1995); *see also* Fed. R. Evid. 804(b)(3).

Appellant attempted to call Jeremy to testify, but Jeremy invoked his 5th Amendment right not to testify. Jeremy was therefore clearly unavailable. Fed. R. Evid. 804(a)(1); *see also United States v. Briscoe*, 742 F.2d 842, 846 (5th Cir. 1984). This statement, however, was not clearly against penal interest, because while it tended to exculpate Appellant it did not necessarily inculpate Jeremy. More importantly, even if the district court did abuse its discretion in admitting the statement, the error was harmless. Appellant drove with Jeremy to the site

of the drug deal, encouraged the informant to move to a more secluded area of the parking lot, kept watch while the drug deal happened, and later confessed in detail to a jailhouse informant. Appellant was therefore not substantially prejudiced by any error in the exclusion of this statement. *See Morgan*, 505 F.3d at 339.

## III. CONCLUSION

For these reasons we AFFIRM the judgment of the district court.